### BERWIND–WHITE COAL MINING CO. v. UNITED STATES MAIL S. S. CO., Inc.

(Circuit Court of Appeals, Second Circuit. January 8, 1923.)

No. 83.

**Aliens ☞54½—Not liable for head tax imposed on owner of vessel.**

Receivers in equity appointed for a steamship corporation are not the owners of vessels belonging to the corporation, but are officers of the court, having mere right to possession, so that they are not liable, after the corporation had been adjudged bankrupt and they had turned over the assets to the trustee in bankruptcy, for the amount of the head tax on alien immigrants brought in by two vessels which were at sea when they were appointed, notwithstanding the provision of Act Feb. 5, 1917, § 2 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼aa), levying such tax and making the owners of the vessels bringing the aliens liable therefor.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Berwind-White Coal Mining Company against the United States Mail Steamship Company, Inc., in which the United States claimed from the receivers appointed for defendant corporation the amount of head tax on alien immigrants brought in by two ships belonging to the corporation. From a final order denying the claim, the United States appeals. Affirmed.

Appeal from a final order in equity entered in the District Court for the Southern District of New York. Defendant steamship company is a corporation formed to carry goods and passengers by sea. The United States owns the steamers America and George Washington, and before the events giving rise to this litigation had chartered said vessels to the steamship company, under what is called a "bare boat" charter. Of this document it suffices to note that it was plainly a demise of the vessels; that the company became the

owner thereof pro hac vice, and specially agreed to "pay and discharge when due and payable from time to time all taxes, assessments, and governmental charges."

On August 17, 1921, receivers were appointed for the steamship company under the usual creditors' bill. The order of appointment directed the receivers "to conduct and have complete and exclusive control" of all the company's assets; to "continue * * * the business of" the company, and to "collect the * * * incomes, freights, passenger moneys, and profits" of the defendant. The receivers never adopted the charter as a contract of defendant; on the contrary, the United States promptly treated the charter party as forfeit, and demanded return of its steamers. The right to return was recognized, and on August 26th an order passed "authorizing and empowering" the United States to "withdraw" the two steamers above mentioned and many others "from the service of [defendant] and of the receivers herein."

When receivers were appointed the America was at sea, en route from Bremen to New York, where she arrived August 22d; the Washington left Bremen on August 17th, arrived at New York August 27th, and was at once taken possession of by the United States, but the receivers seem to have attended to her landing and unloading. Meanwhile, and before appointment of receivers, a petition in bankruptcy had been filed against the steamship company; adjudication followed on November 14, 1921, and trustees were duly elected, whereupon the receivers were ordered to settle their accounts and turn over any surplus to the trustees. On October 20, 1921, the United States informally claimed from the equity receivers (among other items) $2,120 for "head tax on alien immigrants" ex America August 22d, and on February 15, 1922, similarly demanded $3,424 for such aliens ex George Washington August 27th, and also some minor charges, mostly incidental to care of immigrants ex these two vessels.

The legality of this claim as against the receivers was duly submitted to the lower court, which had entertained the bill in equity, and was settling the receivers' accounts. Ground of claim is section 2 of Act Feb. 5, 1917 (39 Stat. 875; Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼aa), of which the relevant language is quoted below.[1] The court denied the government's demand, whereupon this appeal was taken.

William Hayward, U. S. Atty., and Thomas J. Crawford, Asst. U. S. Atty., both of New York City.

Worcester, Williams & Saxe, of New York City (John G. Saxe, George C. Sprague, and Edward S. Dore, all of New York City, of counsel), for appellee.

Hunt, Hill & Betts, of New York City, for trustees.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). It must be emphasized that this is not a claim against the United States Mail Company, nor against its estate in bankruptcy; the government is pur-

---

[1] "There shall be levied, collected, and paid a tax of $8 for every alien, including alien seamen regularly admitted as provided in this act, entering the United States. * * * The said tax shall be paid to the collector of customs of the port or customs district to which said alien shall come * * * by the master, agent, owner, or consignee of the vessel, transportation line, or other conveyance or vehicle bringing such alien to the United States, or by the alien himself if he does not come by a vessel, transportation line. * * * The tax imposed by this section shall be a lien upon the vessel or other vehicle of carriage or transportation bringing such aliens to the United States, and shall be a debt in favor of the United States against the owner or owners of such vessel or other vehicle, and the payment of such tax may be enforced by any legal or equitable remedy."

287 F.—8

suing the equity receivers on the theory that in their official capacity they have brought themselves within the liabilities imposed by the quoted statute. No question arises as to governmental preference under any of the well-known statutes dealing with that subject; we are not concerned with any right of the United States to recover these taxes from the bankrupt estate; the only question before us is the liability of the receivers as such.

The act declares, in language free from all ambiguity, who, after collection, shall pay the head tax; (2) by what lien that tax is secured; and (3) against whom the amount of tax shall constitute a debt. Plainly only an owner owes the tax, and much effort is made to show that United States Mail as chartered owner or owner pro hac vice is within the statute as a debtor. The point is immaterial, for we may assume that an action would have lain against that corporation to recover these taxes as debts, without affecting decision of the cause at bar.

The material point is that these receivers never owned nor had title to the steamship company's property, assets, or business. The sufficient reason for this is that such officials are but the agents of the court to take possession, and their rights and liabilities arise wholly from what in contemplation of law is the possession of the court. Not only were the receivers never owners of these steamers, either absolutely or pro hac vice, but by the filing of petition in bankruptcy followed by adjudication, the title of the trustees has related back to a date anterior to the receivers' appointment. Everett v. Judson, 228 U. S. 474, 33 Sup. Ct. 568, 57 L. Ed. 927, 46 L. R. A. (N. S.) 154.

It is substantially asserted by appellant that because in some way the United States Mail Company could have been forced to pay, therefore any receivers of that concern functioning when the aliens "entered" this country must also pay, because the receivers stand in the insolvent's shoes. This is a mistaken view of the office and duty of receivers. They distinctly do not so stand; on the contrary, they exist because the court deprives a party of possession of his own property, and puts in control indifferent persons who do not succeed, but supplant defendants whose title (as distinct from possession) is undisturbed by the process.

This elementary truth does not forbid enforcing against the property in the receivers' hands obligations of the defendant. General creditors or those secured by lien ordinarily have that right; but in this instance bankruptcy followed by proper orders in this cause has transferred all such demands to the bankruptcy court. Therefore the government must go to that court, unless some words of this particular statute can be pointed out whereby receivers become "owners." There are no such words; on the other hand, that a taxing act must especially be construed according to its clear language is a proposition too familiar to need citation in support.

Order affirmed, without prejudice to such proceedings in bankruptcy as appellant may be advised.